# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black/Blue Apple Iphone with "Hulk" decal case<br>FPF No. 2023250100032801 Line Item 0011<br>Target Device 2 | )<br>)<br>) Case No.   '23  MJ2049<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the     Southern    District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC section 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Conspiracy |
| 21 USC Section 841 and 846 | Possession with Intent to Distribute and Conspiracy to do the same |
| 18 USC 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Task Force Officer Andrew C. Dion
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
    telephone     *(specify reliable electronic means)*.

Date:  6/7/23

*William V. Gallo*
*Judge's signature*

City and state: San Diego, California                 Hon. William V. Gallo
*Printed name and title*

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black/Blue Apple Iphone with "Hulk" decal case
> FPF No. 2023250100032801 Line Item 0011
> ("**Target Device 2**")

**Target Device 2** is currently in the custody of Homeland Security Investigations, located at 2055 Sanyo Avenue, San Diego, CA 92154.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2022, up to and including March 1, 2023, for the following:

a. tending to indicate efforts to distribute narcotics within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the distribution of narcotics within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of narcotics within the United States;

d. tending to identify travel to or presence at locations involved in narcotics distribution within the United States, and/or transporting them to their final destination within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to **Target Device 2**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 18, United States Code, section 924(c)(1)(A)(i) (Possession of a Firearm in Furtherance of a Drug Trafficking Conspiracy); Title 21, United States Code, Section 841 (Possession with Intent to Distribute); Title 21, United States Code, Section 846 (Conspiracy Possession with

Intent to Distribute); Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm and Ammunition).

# AFFIDAVIT

I, Homeland Security Investigations (HSI) Task Force Officer Andrew C. Dion, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

>Blue Apple Iphone with plaid case
>FPF No. 2023250100032801 Line Item 0012
>("**Target Device 1**")

>Black/Blue Apple Iphone with "Hulk" decal case
>FPF No. 2023250100032801 Line Item 0011
>("**Target Device 2**")

>Black Samsung Cellphone
>FPF No. 2023250100032801 Line Item 0013
>("**Target Device 3**")

>Silver/Aluminum Apple Macbook FVFZXNZHLYWG
>FPF No. 2023250100032801 Line Item 0014
>("**Target Device 4**")

>Silver/Aluminum Apple Macbook C02S21X6GTHT
>FPF No. 2023250100032801 Line Item 0015
>("**Target Device 5**")

(collectively the "Target Devices") as further described in Attachment A-1, A-2, A-3, A-4 and A-5 and to seize evidence of crimes, specifically violations of Title 18, United States Code, section 924(c)(1)(A)(i); Title 21, United States Code, Section 841; Title 21, United States Code, Section 846; Title 18, United States Code, Section 922(g)(1), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Sean Keenan OCONNOR for the possession of approximately 2,812 M30 fentanyl pills, other illicit narcotics, a firearm, and ammunition on February 28, 2023. The **Target Devices** are currently in the custody of Homeland Security Investigations, located at 2055 Sanyo Avenue, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents/officers regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Task Force Officer currently assigned to the Department of Homeland Security, Homeland Security Investigations (HSI). Since February 2023, I have been assigned to the Fentanyl Abatement and Suppression Team (FAST) of HSI's San Diego Field Office in San Diego, California. FAST is a multi-agency task force focused on stopping the spread of fentanyl in San Diego and surrounding counties. FAST is designed to provide support to state and local agencies seeking to attack the problem of fentanyl distribution and to target fentanyl distributors.

4. I have approximately 15 years of experience as a United States Border Patrol Agent; six of those years as a Supervisory Border Patrol Agent. I have a total of four years of experience as a Task Force Officer with the Drug Enforcement Administration (DEA) at both the Palm Springs Narcotics Task Force located in Palm Springs, California and Narcotics Task Force Team 3 of the San Diego Field Division located in San Diego, CA. During my time with the DEA, I gained experience in narcotic investigations through

obtaining and conducting search/arrest warrants, obtaining and monitoring wiretaps, conducting surveillance, and arresting individuals for narcotics violations throughout the Riverside and San Diego Counties. I have two years of experience as certified Detection Canine Handler with the United States Border Patrol (USBP) in Indio, California. During my time as a Canine Handler, my canine partner and I seized over 15 million dollars in combined cash value illicit narcotics and bulk cash. Throughout my career with USBP and my assignments with HSI and DEA, I have been involved in over a hundred narcotics related arrests and seizures to include sales, possession, and smuggling events.

5. Throughout my law enforcement career, I have interviewed or witnessed the interviews of hundreds of subjects who have been involved in the sales, possession, and smuggling of narcotics. I have become familiar with the manner in which narcotics are packaged, transported, and used. I have executed over twenty search warrants involving narcotic violations. I have observed narcotics being sold to informants or undercover police officers/federal agents. I have also conducted surveillance on known narcotics dealers.

6. I graduated from the United States Border Patrol Academy in Artesia, New Mexico in 2008. I have received several hundred hours of supplemental training throughout my law enforcement career in relation to narcotics distribution to include: drug interdiction, narcotics smuggling trends, and surveillance operations. I have testified in state and federal court multiple times in relation to drug violations and drug smuggling cases. I have become familiar with the methods used by narcotics traffickers to distribute, transport, store, and import controlled substances. I know that narcotics trafficking organizations have developed numerous methods to conceal their illicit activities from law enforcement. For example, I know that members of narcotics trafficking organizations use electronic communications devices to include laptops, cellphones, and mobile messaging applications such as WhatsApp, Snapchat, and Instagram to communicate. These applications are utilized by members of narcotics traffickers to plan and conduct illegal activities to other organization members. These members routinely use coded language to

avoid law enforcement detection. This communication of time-sensitive information is critical to the successful conduct of these organizations' illegal activities.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotic smuggling investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) and laptops can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and/or laptop. Specifically, searches of cellular telephones and/or laptops of individuals involved in the smuggling of narcotics may yield evidence:

    a.    tending to indicate efforts to distribute narcotics within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of narcotics within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of narcotics within the United States;

    d.    tending to identify travel to or presence at locations involved in narcotics distribution within the United States, and/or transporting them to their final destination within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to **Target Device 2**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

# FACTS SUPPORTING PROBABLE CAUSE

## A. Overview

8. On February 28, 2023, San Diego County Sheriff's Department (SDSD) executed a California State search warrant (Warrant ID#: 2302211532-SDSD-PKC-SW signed by the Honorable Patricia Cookson of San Diego County on Feb 21, 2023). The search warrant authorized the search of three things: (1) SEAN KEENAN OCONNOR; (2) grayish brown 2010 Nissan Murano CA 6NYY494 (vehicle registered to OCONNOR's mother, but known to be driven by OCONNOR); and (3) OCONNOR's residence at 237 South Clementine Street, Oceanside, California, 92054.

## B. Search of Nissan Murano

9. At approximately 3:00 P.M., OCONNOR was observed driving the Nissan Murano toward his residence when a SDSD Deputy initiated a vehicle stop near 273 South Freeman Street in Oceanside, CA and executed a search warrant on the Nissan Murano. During the search of OCONNOR's person, OCONNOR was found to be in possession of approximately 216 blue pills labeled "M30," a cellular telephone (**Target Device 1**), and $930.00 United States Dollars (USD). During a search of OCONNOR's vehicle, OCONNOR was found to be in possession of marijuana, an open bottle of alprazolam (Farmapram/Xanax), a baggie of psilocybin mushrooms, a bottle of promethazine with codeine cough syrup bearing someone else's name, ten boxes of THC marijuana vape products, an additional baggie containing four (4) fentanyl pills and a laptop (**Target Device 4**).

## C. Search of 237 South Clementine Street, Oceanside, California, 92054

10. SDSD conducted a search of 237 South Clementine Street pursuant to a warrant (See Paragraph 8 *supra*). OCONNOR's bedroom was located inside and accessed via the keys recovered from OCONNOR. Multiple items of paperwork with OCONNOR's name on them and other indicia of dominion and control of the room were located inside. The room was also identified by the property manager (who was present) as being OCONNOR's room. Inside the room, deputies located a safe containing $34,980.00 in U.S.

currency, an additional laptop computer (Target Device 5), two additional cell phones (Target Device 2 and 3), dozens of additional THC marijuana vape products, large bags containing several pounds of marijuana, thousands of additional M30 Fentanyl pills, dozens of additional unopened bottles of 90 count alprazolam (Farmapram/Xanax) containing over 4,000 pills, dozens of Oxycodone pills, dozens of counterfeit Adderall pills (later tested presumptive positive for methamphetamine), 86 .22 caliber bullets, a loaded .22 caliber Smith and Wesson semi-automatic pistol containing 7 rounds with the serial number/identifiers shaved off, 6 rounds of .38 special ammunition, packaging materials including hundreds of ziplock baggies of various sizes, heat seal bags, a heat sealer, a digital scale and two baggies of a white substance which later tested presumptively positive for cocaine. The M30 pills later tested presumptively positive for Fentanyl.

11. In total, between the currency and narcotics items recovered from OCONNOR's person, the vehicle, and the residence during the search warrant there were approximately 4,384 alprazolam (Farmapram/Xanax) pills, 2,812 M30 Fentanyl pills, 239 counterfeit Adderall methamphetamine pills, 33 Oxycodone Hydrochloride pills, 1,549 grams of marijuana, 5.7 grams of psilocybin mushrooms, 24.21 grams of cocaine, 100 milliliters of Codeine, 184 marijuana vape products and $35,989.00 in U.S. currency. OCONNOR was placed under arrest at the scene.

**D.   Search of OCONNOR's Social Media Accounts**

12. In December 2022, social media search warrants were obtained for O'CONNOR's social media accounts. The return data showed numerous text and audio recorded messages between O'CONNOR and various other people related to the sales of narcotics, including M30 fentanyl pills, xanax/alprazolam pills, oxycodone hydrochloride pills, hydrocodone pills, marijuana and marijuana vape products, and discussing an unidentified female who had overdosed and had been revived via Naloxone after he sold her narcotics. There were also photographs of O'CONNOR with large quantities of M30 fentanyl pills (approximately 20,000 pills based on the associated text) and holding a firearm. The timeframe of the communications indicated O'CONNOR had been engaged

in narcotics sales activities from 2021 continuing throughout 2022. In the messages, O'CONNOR frequently had customers meet him at 237 South Clementine Street in Oceanside, California. Surveillance was conducted and this addressed was confirmed to be O'CONNOR'S primary residence.

**E.     Death of James Harper by Acute Fentanyl Intoxication**

13.     On September 15, 2022, James Harper was found dead at his residence at 237 South Clementine Street, Oceanside, California 92054. Officers found multiple blue round "M30" pills scattered along with charred aluminum foil and torch lighters upon the floor of Harper's bathroom as well as chopped blue powder in a lined pile along with a credit card and rolled paper bill on Harper's desk. According to the Medical Examiner's report, the cause of death was acute fentanyl intoxication.

**F.     Search of James Harper's Phone with "Blues Shield California"**

14.     A search of James Harper's phone was conducted. During the phone search, agents discovered a text message chain on Harper's phone between a contact saved as "Blues Shield California" and Harper.

**G.     OCONNOR is "Blues Shield California".**

15.     The phone number associated with "Blues Shield California" was 619-592-5855. The subscriber information showed that the number was subscribed to "Sean OConnor." The number was active from May 12, 2021 to September 20, 2022.

16.     In the text message conversation, there were various indicators that OCONNOR authored the text messages sent from the contact "Blues Shield California." For example, "Blues Shield California", stated that he was at the "financial aid office at school." OCONNOR attended school at Mira Costa College. On September 13, 2022, when Harper asked, "Are you back at the pad bud?", Blues Shield California replied, "Yea" and "I'm just in my room chilling." Harper replied, "Cool, be there in a couple." Later, Blues Shield California asked, "U know the WiFi password?", and Harper replied, "SAN FELIPE all caps.,". On September 13, 2022, Harper texted Blues Shield California, "Needless to say I dropped the ball on linking up with You before you left! . . . Need your help! Buy

some beers tonight on me at the bar if you're down." Blues Shield California replied, "My bad Brodie imma be home in like an hour or at 3 pm like usual." Later on September 13, 2022, Blues Shield California texted, "I'm home now g". On September 14, 2022, Blues Shield California texted Harper: "I put the groceries on the counter.". These text messages confirm that James Harper and OCONNOR both lived at 237 South Clementine Street, Oceanside, California 92054 in September 2022.

17. Given that the subscriber information for the phone number 619-592-5855 traced back to OCONNOR and given the context of the text messages, I believe that the text messages sent by "Blues Shield California" to James Harper were authored by OCONNOR.

**H.    Harper asks OCONNOR for narcotics**

18. On September 12, 2022, Harper texted "Blues Shield California," whom I believe to be OCONNOR: "Yo bud, keep in mind I'm running super low on my personal. When your boys take off let's get together. Appreciate you". Blues Shield California replied, "Yes imma go drop them off in a second then I'll come back." Based on my training and experience, I believe that Harper was asking OCONNOR for narcotics.

19. Record checks of law enforcement databases showed that OCONNOR is a convicted felon who is prohibited from owning or possessing firearms or ammunition. Specifically, OCONNOR has been convicted of one felony, to wit: Possession/ Purchase For Sale Narcotics/Controlled Substance (11351 HS) with an Enhancing Factor of Armed with Firearm (September 30, 2021).  This conviction stems from OCONNOR's arrest on February 9, 2021, for narcotics sales (fentanyl pills and cocaine), possession of a loaded firearm, and $38,000.00 USD in cash. After the conviction, OCONNOR was placed on probation with California State fourth amendment waiver search conditions, set to expire November 3, 2023.

I. **Location of Target Devices**

20. **Target Device 1** was found and seized by law enforcement officers who were tasked to conduct a vehicle stop search of OCONNOR and his vehicle when he was taken into custody. The Target Device was found in the Defendant's pants pocket.

21. **Target Device 2** was found and seized by law enforcement officers who were tasked to search OCONNOR's residence. The Target Device was found on the Defendant's bedroom desk.

22. **Target Device 3** was found and seized by law enforcement officers who were tasked to search OCONNOR's residence. The Target Device was found on the Defendant's bedroom desk.

23. **Target Device 4** was found and seized by law enforcement officers who were tasked to conduct a vehicle stop and search of OCONNOR's vehicle when he was taken into custody. The Target Device was found in the Nissan Murano CA 6NYY494.

24. **Target Device 5** was found and seized by law enforcement officers who were tasked to search OCONNOR's residence. The Target Device was found on the Defendant's bedroom desk.

25. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotic investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. Considering the above facts and my experience and training, there is probable cause to believe that OCONNOR was using the **Target Devices** to communicate with others to distribute and to conspire to distribute narcotics within the United States. Moreover, based on my experience and training, there is probable cause to believe that OCONNOR was using the **Target Devices** to obtain firearms. Further, in my training and experience, narcotic dealers may be involved in the planning and coordination of narcotic sales in the days and weeks prior to an event.

Accordingly, I request permission to search **Target Device 2** for data beginning August 1, 2022, up to and including March 1, 2023.

## METHODOLOGY

26. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, I will collect the **Target Devices** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

29. Federal law enforcement has not previously attempted to obtain the evidence sought by this warrant. State law enforcement previously obtained this evidence via San Diego County Probation's fourth amendment waiver search conditions, which included electronic devices. The probationary term and associated conditions of probation expire on November 3, 2023.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

30. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device 2** will yield evidence of OCONNOR's violations of Title 18, United States Code, section 924(c)(1)(A)(i); Title 21, United States Code, Section 841; Title 21, United States Code, Section 846; Title 18, United States Code, Section 922(g)(1). Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A-2 and seize the items listed in Attachment B using the above-described methodology.

31. I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Task Force Officer Andrew C. Dion
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 7th day of June, 2023.

_____
WILLIAM V. GALLO
United States Magistrate Judge

# ATTACHMENT A-2

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black/Blue Apple Iphone with "Hulk" decal case
>FPF No. 2023250100032801 Line Item 0011
>("**Target Device 2**")

**Target Device 2** is currently in the custody of Homeland Security Investigations, located at 2055 Sanyo Avenue, San Diego, CA 92154.

## ATTACHMENT B

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of August 1, 2022, up to and including March 1, 2023, for the following:

    a.    tending to indicate efforts to distribute narcotics within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers– used to facilitate the distribution of narcotics within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of narcotics within the United States;

    d.    tending to identify travel to or presence at locations involved in narcotics distribution within the United States, and/or transporting them to their final destination within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to **Target Device 2**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 18, United States Code, section 924(c)(1)(A)(i) (Possession of a Firearm in Furtherance of a Drug Trafficking Conspiracy); Title 21, United States Code, Section 841 (Possession with Intent to Distribute); Title 21, United States Code, Section 846 (Conspiracy Possession with

Intent to Distribute); Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm and Ammunition).